244 So.2d 25 (1971)
CITY OF OKOLONA et al.
v.
DEPENDENT OF Tom HARLOW, Deceased.
No. 45055.
Supreme Court of Mississippi.
February 1, 1971.
Scribner & Brewer, Tupelo, for appellants.
Walter M. O'Barr, Okolona, for appellee.
ETHRIDGE, Chief Justice:
Tom Harlow, age 56, died while working for the City of Okolona as the helper for a meter reader. The attorney-referee awarded death benefits to his dependent widow (appellee), and this order was affirmed by the Workmen's Compensation Commission and the Circuit Court of Chickasaw County. The question is whether the evidence offered by defendants-appellants rebutted the presumption of a causal connection between the death and employment. Holding that appellants did not effectively rebut that presumption, we affirm the award of compensation benefits.
*26 Harlow was assigned by the city to help Fleming read water and electric meters. The water meters were enclosed in metal boxes which varied from six to eighteen inches below the surface. These boxes had metal tops, and Harlow's job was to precede Fleming, remove the top by kneeling or bending down and lifting it, clean the face of the meter, and, if necessary, remove grass, weeds and dirt from the meter. After working on the morning in question, which was the first day he had performed this job, Harlow returned home to lunch with his wife, where he complained of being sleepy, nervous and "just give out." His wife noticed that his hands were shaking.
After lunch, Harlow and Fleming continued their job. They travelled between meters in a pickup truck driven by Harlow. After checking ten to fifteen meters, they drove to the rear of a bank building, where Fleming alighted to read an electric meter. Although it was not necessary for Harlow to get out of the car, he did, and leaned his arms and head against the truck. When Fleming asked him what the trouble was, Harlow replied, "I have a pain." Within a few seconds he fell to the ground, and Dr. Harris, a general practitioner, was called with an ambulance. When he arrived Harlow was lying in the grass "very cyanotic, gasping for breath and unconscious." He was given oxygen in the ambulance and in the hospital, but died within a short time.
When an employee is found dead at a place where his duties required him to be, or where he might properly have been in the performance of his duties during the hours of his work, there is a presumption that his death was the result of an accident arising out of and in the course of the employment. Leake County Cooperative v. Dependents of Barrett, 226 So.2d 608 (Miss. 1969); Dunn, Mississippi Workmen's Compensation Law § 269 (1967).
This presumption is sufficient to place upon the employer the burden of overcoming it by evidence in explanation of the cause of death, and where no proof is offered except that the employee died from unknown causes, the presumption is not overcome and will justify an award. Mississippi State University v. Hattaway, 191 So.2d 418 (Miss. 1966). Moreover, there is no distinction between a case where the employee is "found dead" and the one where he "falls dead" in the sight of other employees or persons. Mississippi State University v. Hattaway, supra. The presumption is rebuttable, but the employer has the burden of going forward with the evidence in order to rebut it.
Analyzing further this presumption, the Court, in Washington v. Greenville Manufacturing & Machine Works, 223 So.2d 642 (Miss. 1969), stated:
In this case the work activities of Washington remain unexplained. In order to overcome the presumption of causal connection not only must the cause of death be explained, but the work activities of the decedent must also be fully developed to show that such activities did not cause or contribute to the heart attack. (223 So.2d at 647)
We do not think that appellants' evidence met their burden of going forward under the standards outlined in Washington and earlier cases.
The Commission held that Harlow's death was "from an unexplained cause, and therefore the presumption of causal connection * * * was in existence." Clearly, Harlow was in the course of his employment, doing reasonably heavy, physical labor. The only medical witness was Dr. Harris who was offered by defendants. Considered as a whole, his testimony did not explain the cause of death. On direct examination, he stated that Harlow died from a heart attack, either a thrombosis or an occlusion. He was then asked whether "his death was brought about by his activities in work or not." This was not a proper framing of the issue, which is whether Harlow's work activities aggravated, *27 precipitated or contributed to his illness. Further, the doctor's reply to this insufficient question was ambiguous. He stated, "The type of work that the man was doing at the time of his attack, I did not feel that it was a productive factor in his heart attack." The doctor did not say that his work did not contribute to his death.
On cross-examination, the doctor candidly stated that since Harlow did not say where his pain was, there could be a number of other causes of his death, including an aneurysm, a lung embolism, or a cerebral hemorrhage. Accordingly, when the doctor was asked whether his "death could be from unexplained causes," he replied in the affirmative.
A consideration of the totality of this medical testimony reflects that it is equivocal and not definitive on the issue of the cause of death, and therefore the cause of death was unexplained. That being so, the presumption of causal connection applies, as the Commission properly held.
Affirmed.
RODGERS, PATTERSON, SMITH and ROBERTSON, JJ., concur.