508 So.2d 673 (1987)
U.S. RUBBER RECLAIMING COMPANY, INC., and Liberty Mutual Insurance Company
v.
DEPENDENTS OF HOWARD STAMPLEY, Jr., Deceased.
No. 56944.
Supreme Court of Mississippi.
June 3, 1987.
*674 Betty R. Todd, Clinton, for appellant.
Ken Harper, Eugene A. Perrier, Vicksburg, for appellee.
Before WALKER, C.J., and DAN M. LEE and PRATHER, JJ.
DAN M. LEE, Justice, for the Court:
Howard Stampley fell dead on his job at the U.S. Rubber Reclaiming Company on January 28, 1984. A Motion to Controvert was filed with the Workers' Compensation Commission on behalf of his dependents on April 10, 1984, and the case was heard by an Administrative Law Judge on October 9, 1984. After reviewing the testimony of Stampley's family, other company employees, and medical personnel, the ALJ found that there was a compensable injury. The judge found that three of Stampley's children and one of his grandchildren were dependent upon Stampley, and should receive maximum death benefits. However, he found insufficient evidence that Lillie Mae Stampley, Howard Stampley's purported widow, had participated in a ceremonial marriage to Stampley, pursuant to a license.
The full Commission reviewed this Order and affirmed it on May 2, 1985. On October 16, 1985, the Circuit Judge affirmed the Commission. U.S. Rubber and its carrier, Liberty Mutual, have appealed, assigning as error:
1. The findings of fact and conclusions of law are contrary to the overwhelming weight of the evidence and manifestly wrong.
2. The finding that Stampley died of unknown causes required the appellants to meet a burden of proof contrary to the law, and there was error in the finding that they failed to rebut the fell-dead presumption of causal connection.
3. There was error in the denial of apportionment.
4. Michael Stampley, Sandra Stampley, Aretha Stampley, and Shonda Stampley were not entitled to death benefits, nor were they entitled to $1250.00 in funeral expenses.
We hold that the Commission's order was amply supported by the evidence and the law, and that none of the assigned errors has merit. Therefore, we affirm.

FACTS
Horace Stampley, a forty-three-year-old man, died at his place of employment on Saturday, January 28, 1984. At the time of his death, he was engaged in the performance of his duties, which were primarily the changing of screens on the company's bagging machines. That task involved unscrewing a jam nut, lifting the screen (which weighed, at most, about 36 pounds), cleaning the screen, and putting it back on the machine.
On the day of Stampley's death, he had reported to work at 7:00 a.m. He worked in one area of the plant until he took his 9:00 a.m. break. Then he returned to the area where he cleaned screens and engaged in conversation with some of his co-workers.
At about 10:40 a.m., Stampley descended approximately 16-17 steps from the second floor area, where he normally worked, to the main floor, where Roscoe Younger's bagging machine was located. Stampley asked Younger to turn his machine off so that he could remove the screen. As Younger turned to comply with this request, he heard Stampley say, "Oh." Turning back around to face Stampley, Younger saw him fall against a bagging machine, then roll off it and hit the floor.
Younger rushed to Stampley and asked him if he was all right, but got no response. Two other workers helped Younger turn Stampley over and began CPR. Stampley's eyes were dilated and red, and there was a bloody foam about his mouth. He never regained consciousness. Stampley was transported to Vicksburg Medical *675 Center about 10-15 minutes after his collapse, where, after about 20 minutes of resuscitation, he was pronounced dead.
Stampley, who was 5'9 1/2" tall and weighed 265 pounds, was nicknamed "Round Man." He had been diagnosed in April 1983 as having congestive heart failure, from an accumulation of fluid in the lungs, due to pneumonia. He was hospitalized for treatment of this condition, and discharged with no complications. However, an x-ray taken at that time showed significant cardiac enlargement, and an EKG indicated myocardial disease. His physician, Dr. Jesus Lemus, saw him on a follow-up visit on April 27, 1983, when his weight was 276 pounds. Stampley's blood pressure registered, first, 160/130, then 140/110. At that point, Lemus diagnosed him as being hypertensive and prescribed medication and a low salt diet. Lemus continued to see Stampley from April through September 1983. During that time, Stampley's blood pressure fluctuated, indicating that he was not taking his medicine regularly.
Lemus could not state Stampley's probable cause of death. He thought that his blood pressure was moderately well-controlled, and that he was in good general health. However, Lemus recognized an abnormality showing up in a 1978 EKG as being probable Wolff-Parkinson-White syndrome, which he described as an abnormality in electric conduction across the muscle of the heart. Another EKG done in 1983 also showed an abnormality in conduction in the heart muscle.
Dr. James L. Crosthwait testified for the company as an expert in cardiology. He had never met or examined Stampley, nor had he spoken with Lemus. However, he had reviewed Lemus's records. Crosthwait was quite certain that Stampley's 1979 EKG showed Wolff-Parkinson-White (WPW) syndrome, Type B. Crosthwait admitted, however, that subsequent EKG's, while also showing an abnormality, did not show WPW.
According to Crosthwait, WPW predisposes a patient to abnormal heartbeats, up to the range of 150-250/minute. While this increase could be tolerated well by some people, it could cause sudden death in an older person. Crosthwait felt that this condition was compounded by Stampley's enlarged heart, which, itself, was caused by chronic uncontrolled hypertension. The doctor stated that Stampley's prognosis with these conditions was very poor.
In response to the hypothetical posed to him about Stampley's death, Crosthwait said that his work had no significant relationship to the death, but that it was caused 90% by pre-existing conditions. He testified that WPW predisposed Stampley to malignant, more lethal arrhythmia, and that acute malignant arrhythmia resulted in Stampley's sudden death. The doctor was adamant in this opinion; however, he could not say what triggered the arrhythmia.
No autopsy was performed on Stampley. His wife testified that she had originally given permission for an autopsy to be performed, and she did not know why it was not done. She was asked by appellant's counsel at her deposition about eight months after Stampley's death if she would object to the body's being exhumed and an autopsy performed.
Stampley's death certificate listed the cause of death as "natural causes." However, the justice court judge who filled out the certificate had no medical training, and came to this conclusion only after finding no evidence of foul play.
Some evidence was presented at the hearing to indicate that the machine that Stampley fell against could have had an electrical malfunction. However, others testified that there was no such problem with any of the machines in the plant, and that, in any event, there was no indication that Stampley's body had been burned.
The dependents claiming on behalf of Stampley were his wife, Lillie Mae, his son, Michael (born 9/9/66), his daughter, Sandra (born 3/2/68), his daughter, Aretha (born 12/7/71), and his granddaughter, Shonda (born 8/3/82). Stampley listed Michael, Sandra, and Aretha, along with his older children, as his dependents on his *676 employment application in 1978. Shonda was the daughter of Stampley's daughter, Shirley, who was almost 20 years old at the time of his death. All of the claimants lived with Stampley at the time of his death, and Mrs. Stampley testified that they were all dependent on him, although Shirley had worked for a time as a waitress, and received Aid to Dependent Children for Shonda. Mrs. Stampley also stated that Shonda called Stampley "Daddy."

I. WAS THE "FELL-DEAD" PRESUMPTION PROPERLY APPLIED IN THIS CASE, AND DID THE COMPANY/CARRIER REBUT IT?

The "found-dead" presumption, described in Washington v. Greenville Mfg. & Machine Works, 223 So.2d 642, 645 (Miss. 1969), works thusly:
The rule is firmly established in this state when an employee is found dead at a place where his duties require him to be or where he might properly be in the performance of his duties during work hours in the absence of evidence that he was not engaged in his employer's business, there is a presumption that the accident arose out of and in the course of his employment.
This presumption applies regardless of whether the employee is "found dead" at his place of employment, or "falls dead" in the presence of fellow employees. Mississippi State University v. Dependents of Hattaway, 191 So.2d 418 (Miss. 1966). The effect of the presumption on the employer's case was stated in Okolona v. Dependent of Harlow, 244 So.2d 25 (Miss. 1971) to be:
This presumption is sufficient to place upon the employer the burden of overcoming it by evidence in explanation of the cause of death, and where no proof is offered except that the employee died from unknown causes, the presumption is not overcome and will justify an award.
Id., at 26.
This case is controlled by our recent decision in Road Maintenance Supply, Inc. v. Dependents of Maxwell, 493 So.2d 318 (Miss. 1986). There, the decedent, Maxwell, was at his job as a truck driver when, while standing on some rocks behind a truck, he fell dead. No autopsy was performed, although the examining physician noted on the death certificate that the immediate cause of death was "acute myocardial infarction." Maxwell's personal physician testified to a history of heart trouble, and gave his opinion that Maxwell had suffered a "Stokes-Adams" attack precipitated by severe cardiac arrhythmia or a myocardial infarction. Justice Robertson, writing for the majority, found the case to be indistinguishable from Washington, stating:
In today's case, we have no credible medical expert opinion testimony to the effect that Maxwell's death, even assuming it to have been the result of a heart attack, was not caused at least in part by his work activities. Dr. Flannery, a family practitioner, merely stated that he didn't think Maxwell's work had anything to do with his death, that he "could have had a similar spell walking down the street, or .... at home." But the fact is that Maxwell didn't have his fatal attack walking down the street or at home. It occurred while he was on the job.
... .
James L. Maxwell, Jr. fell and died at his place of employment during his regular hours of employment. A rebuttable presumption arose that his death was in whole or in part causally related to his employment. Employer and carrier at that point had the burden of going forward with credible evidence  as distinguished from guesswork, speculation and conjecture  that Maxwell's death was not work connected. It avails employer and carrier nothing to say that the evidence that Maxwell's death was work connected is slim. Our law burdened them to produce credible evidence to the contrary, on penalty of having the issue resolved in claimant's favor. On the authority of Washington and progeny, we hold that employer and carrier failed to meet their burden.
Id., at 321-22.
Similarly, we hold in this case that the testimony regarding the possibility that *677 Stampley suffered an attack of acute malignant arrhythmia does not adequately explain his death on the job, and that the appellants here failed to meet the burden of proof required to rebut the "fell-dead" presumption. There is no merit to this assignment of error.

II. SHOULD THE COMMISSION HAVE MANDATED APPORTIONMENT?
In this case, the cause of the employee's death remains unknown. Therefore, there is no basis upon which to award apportionment. We find no reversible error in this assignment.

III. DID THE COMMISSION ERR IN HOLDING MICHAEL, SANDRA, ARETHA AND SHONDA STAMPLEY TO BE DEPENDENTS OF HOWARD STAMPLEY?
There is no evidence in the record to show anything other than the fact that Michael, Sandra, and Aretha were the natural legitimate children of Howard Stampley and were under 18 years of age when he died. A natural legitimate child under the age of 18 is conclusively presumed to be wholly dependent. V.S. Dunn, Workmen's Compensation § 47 (3d ed. 1982).
The appellants' primary argument here regards the elevation to child's status of Shonda Stampley, the granddaughter. We held in Longleaf Forest Products, Inc. v. Hopkins, 349 So.2d 523 (Miss. 1977), that a grandchild to whom the deceased had stood in place of a parent for at least one year prior to the injury may be elevated to child status. The evidence in this case is uncontroverted that Howard Stampley had stood in the place of Shonda's father all of her life; she even called him "Daddy." There is no error in the Commission's award of death benefits to Stampley's minor children and to his granddaughter, Shonda.
Finding no reversible error herein, we affirm the circuit court below.
AFFIRM.
WALKER, C.J., ROY NOBLE LEE and HAWKINS, P.JJ., and PRATHER, ROBERTSON, SULLIVAN, ANDERSON and GRIFFIN, JJ., concur.