592 So.2d 110 (1991)
Scott Madison TREST, Administrator of the Estate of Clinton Houston Trest, Sr.
v.
B.C. ROGERS PROCESSORS, INC. and Commercial Union Insurance Company.
No. 90-CC-1184.
Supreme Court of Mississippi.
December 18, 1991.
Rehearing Denied January 29, 1992.
John S. Knowles, III, Brantley & Knowles, Jackson, Eugene C. Tullos, Tullos & Tullos, Raleigh, for appellant.
Donald V. Burch, Robert F. Stacy, Jr., Charles L. Dunn, Daniel Coker, Horton & Bell, Jackson, for appellee.
Before DAN M. LEE, P.J., and ROBERTSON and SULLIVAN, JJ.
SULLIVAN, Justice, for the Court:
The issue in today's workers' compensation case is one of causation.
*111 The case is before this Court after a denial of benefits by the Administrative Judge on May 17, 1989. The Administrative Judge was affirmed by the Workers' Compensation Commission and by the Circuit Court of Newton County, Mississippi, Hon. Edward A. Williamson presiding.

FACTS
Clinton H. Trest "worked chickens" for B.C. Rogers for twenty-one years until he injured himself on the job after a fall on June 14, 1985. The 68 year old Trest was supervising a chicken vaccinating crew when he stepped down from a three foot platform in a chicken house and fell on his right side. Trest remained with his crew for four to five hours that night until the job at hand was completed. The next morning he reported his injury to his supervisor and was instructed to go to the doctor. Trest saw Dr. Howard Clark. Trest had suffered a hernia ten years earlier, and upon examination Dr. Clark determined it had then strangulated. Dr. Clark also determined that in the fall, Trest sustained injuries to his back, neck, right hip and right leg. Surgery corrected the hernia but Trest never returned to work and became permanently and totally disabled thereafter. Pain in the back and a swollen right leg persisted and both were documented in visits to Dr. Clark beginning with the first visit on the morning of June 15, 1985, and continuing through February 13, 1990. In his deposition, Dr. Clark candidly testified to the cause of the back injury:
When he first started complaining of back pain  well, first, I related all of his pain to the inguinal area, to the hernia. And I really thought that when we did the hernia repair it should take care of his pain. After the hernia pain and he came to the clinic still complaining of pain, then there was that supposition that maybe he hurt his back at the same time he got the hernia because it was a trauma enough to cause a hernia apparently, so I had to suppose that it must be from the same time and same occasion that he got the hernia.
As to the cause of injury to the right leg, he concluded:
Well, I really thought when his leg started swelling that maybe during the surgery we had impinged upon the blood flow enough in that area that it caused that, you see. And again, maybe it was just due to trauma because people get phlebitis without having surgery. So whether it was due to  my thoughts at the time was whether it was due  in my differential diagnosis it had to be due to things I had done to the patient in the surgery or things he had done to himself at the time of the accident, you see; and at one time I thought he probably had an occlusion of that vessel.
When he kept on with the backache, I sent him to Central Orthopedic first, and then he kept on having swelling and I sent him to Dr. William O. Barnett to determine the cause of the swelling in his leg, because really at that time I couldn't say whether I had caused it in the surgery or whether he had caused it when he injured himself.
When asked if Trest was disabled to do his work:
In my opinion, based upon my observation of him during the last few years, I don't think that he could stand for eight hours. I don't think he could do physical work. I don't think he could stand for eight hours and I don't think he could do physical work, as I understand the work that goes on in a chicken house.
* * * * * *
The back and leg problems I think are permanent. The swelling seems to be a little better to me than it was at one time. Now, how much more it's going to get, I don't know.
The direct examination concluded with this question and answer:
Q Have all the opinions you've given here today been based upon a reasonable degree of medical probability?
A Yes.
Cross-examination confirmed a prior protrusion of a right indirect incarcerated hernia some ten years prior to this injury. In further response to cross-examination, the *112 following corroborative medical testimony as to the causation of Trest's other injuries and his permanent disability follows:
A Right, and this time when the hernia got down, we just couldn't reduce it. He was also complaining of pain in the right arm and right leg and neck. Now, I kind of at this time related the pain to the hernia. It says he had good bowel sounds I was still unable to reduce the hernia. (Emphasis added).
* * * * * *
A [S]ince there was this natural order of following my operation, I had to relate it to either the injury or the operation, and since it was involving the same side as we had operated on.
* * * * * *
A No, sir, I just had to assume that if a person fell and there was enough trauma there to cause that hernia  to push his hernia down enough that he couldn't get it out and the pain followed that, then the pain either had to be due to the hernia or due to some excess stretching or trauma to the joints that happened at the time. After we repaired the hernia, if it was due to the hernia the pain should have gone away, and surely by this time the man's got arthritis, no doubt it. Now, what it's due to, I don't know.
* * * * * *
Q And I believe you indicated on your B-27 form that insofar as the hernia was concerned, you discharged him as cured on July the 12th of '85?
A That was the report at that time. Now, obviously he kept coming back complaining of the swelling, the leg pain, the back pain, and still does. As far as the mechanical procedure of the hernia repair, that was the date that we thought that repair was well.
The doctor confirmed and stressed Trest's inability to work since the injury, "to my knowledge he has not worked since the surgery. He's not been able to work since the surgery." In answer to the causation question concerning the problem in the right leg, the doctor stated:
[T]hen Dr. O'Mara decided it was due to a low grade thrombophlebitis, and that was what  it had to be a clot or a phlebitis, and it's common to have phlebitis following surgery. That's the way I lost my first wife.
* * * * * *
[P]hlebitis  its common to get phlebitis and also blood clots from immobility  people who are laid up in bed for several days, whether it be from surgery or just old age or what. That's true.
When pressed on the question of causation for the backaches, the doctor responded:
A He has more. If you could see him today, he moves around  I mean he has a hard time getting around today. He has enough limitation of motion that it's pretty hard for him to get around. He kind of walks like a real old fellow.
Dr. Clark also responded to the following question:
Q And I believe in Mr. Trest's case the exact cause was never really pinpointed?
A No, sir, I had to assume that it was a complication of the surgery really, following the surgery and maybe we didn't ambulate him soon enough or maybe he didn't get around soon enough, which the pain was probably what slowed him down.
Rogers concluded by cross-examination with a question about Trest's congestive heart failure to which Dr. Clark responded:
A Respiratory infections, the COPD, his hypertension. See, his COPD probably brought on the hypertension. His pain, his swelling in the leg because of the poor circulation, that put more stress on the heart to get the blood through, and everything put together.
B.C. Rogers Processors, Inc. and Commercial Union Insurance Company both admit that Trest was an employee covered by the Mississippi Workers' Compensation Act and performing services of employment at the time of this injury. They admit notice of the injury but they deny it is compensable and deny that Trest is disabled due to *113 accidental injury. Both the employer and the carrier affirmatively claim that Trest has a prior hernia that precludes his claim.

THE LAW
Our scope of review is limited and we will reverse the decision of the Commission only if it is manifestly wrong and not supported by substantial evidence. Metal Trims Industries, Inc. v. Stovall, 562 So.2d 1293 (Miss. 1990); Robinson v. Packard Elec. Div. General Mills Corp., 523 So.2d 329 (Miss. 1988).
In this record the only evidence is the testimony of Trest, his two fellow employees and Dr. Clark. Rogers and Commercial Union made their entire defense through cross-examination.
There is substantial evidence supporting compensation, not for the hernia, but for the other injuries Trest sustained in the same fall. There is uncontradicted testimony (1) that Trest was injured while performing his job for B.C. Rogers and (2) that Trest is totally and permanently disabled. The difficult question is one of causation because of the inability of the medical doctor to put his finger on the exact physical cause. That alone does not defeat Trest's claim for compensation given the beneficent purpose of the Mississippi Workers' Compensation Act. Sperry-Vickers, Inc. v. Honea, 394 So.2d 1380 (Miss. 1981); Penrod Drilling Co. v. Etheridge, 487 So.2d 1330 (Miss. 1986).
Dunn, Mississippi Workmen's Compensation, § 281 (3d ed. 1982), states:
Thus, where the claimant's medical witness gives it as his professional opinion that the claimant continues to suffer disability as a result of accident and advances several theories as to the possible cause, which are related to the injury, his inability to say which of the several possible causes was the actual cause will not defeat the claim, and this is especially true when the claimant testifies that he continues to be unable to work since the accident.
* * * * * *
In such cases, evidence of an accident followed by disabling pain and the absence of evidence as to the cause of the pain from objective medical findings has been found sufficient as a basic for compensation, at least in the absence of circumstances tending to show malingering or to indicate that the claimant's testimony as to pain is not inherently improbable, incredible or unreasonable, or that the testimony is untrustworthy.
* * * * * *
In this type of case, the elements considered may include (1) the occurrence of a definite trauma or exertion on the job, (2) a pre-existing disease, (3) work history showing performance in the past without difficulty or incident and (4) the time elapsing between the trauma and manifestation of disability. When the time element is short and the other elements appear, including medical admissions of a possibility of causal connection, the commission may infer causal connection.
From the record in this case we conclude that the order of the Workers' Compensation Commission is not supported by substantial evidence and, in fact, is manifestly wrong. We therefore reverse the decision of the Commission and the Circuit Court of Newton County and remand to the Mississippi Workers' Compensation Commission for a calculation of the benefits due the Estate of Clinton Houston Trest, Sr., for his total and permanent disability.
REVERSED AND REMANDED TO THE COMMISSION TO CALCULATE THE BENEFITS DUE THE ESTATE OF CLINTON HOUSTON TREST, SR., FOR TOTAL AND PERMANENT DISABILITY.
HAWKINS and DAN M. LEE, P.JJ., and PRATHER, ROBERTSON, PITTMAN, BANKS and McRAE, JJ., concur.
ROY NOBLE LEE, C.J., not participating.