629 So.2d 554 (1993)
Claude NETTLES, Guardian for Beneficiaries of Annie Nettles, Deceased
v.
GULF CITY FISHERIES, INC. and Liberty Mutual Insurance Company.
No. 91-CC-0344.
Supreme Court of Mississippi.
December 9, 1993.
*555 Jim Davis Hull, Moss Point, for appellant.
Lisa P. Dodson, Hopkins Dodson Wyatt & Crawley, Gulfport, for appellees.
Before DAN M. LEE, P.J., and McRAE and SMITH, JJ.
McRAE, Justice, for the Court:
This appeal arises from the Jackson County Circuit Court judgment of March 5, 1991, affirming the Workers' Compensation Commission order that denied workers' compensation benefits to Annie Nettles' children. The order held that no causal connection existed between the work activity and death of Annie Nettles. We hold that the "found dead" presumption applies and that Gulf City Fisheries, Inc. and Liberty Mutual Insurance Company failed to offer credible medical testimony necessary to rebut the presumption that Annie Nettles suffered headaches on the job, left work, subsequently passed out and was taken to the hospital, where she later died. The Workers' Compensation Commission and the Jackson County Circuit Court manifestly erred by failing to apply the "found dead" presumption and in denying death benefits. We reverse and remand to the Commission for calculation and payments of benefits and penalties.

I.
Annie Nettles was employed by Gulf City Fisheries, a seafood processor in Pascagoula, Mississippi. Nettles' duties at work consisted of removing four-pound boxes of seafood from a conveyor belt and placing two boxes at a time on a rack, requiring her to "bend and stoop."
During her noon break on February 1, 1984, Nettles complained of a headache to a co-worker, Josephine Pryear. At the afternoon break, she again complained to her supervisor, Shirley Johnson, of a severe headache and loss of sight. She asked the supervisor to call a family member to come and get her.
Nettles was escorted outside the plant by co-employee, Fannie Matthews. When family members arrived, they found Nettles lying prostrate on the ground. They immediately took her to the Singing River Hospital in Pascagoula where she was diagnosed with "malignant phase hypertension accompanied by intracerebral hemorrhage." At that time, Nettles was disoriented and unable to give an account of what had happened. Her condition worsened, and she died on February 6, 1984. The cause of death was listed as "subendocardial myocardial infarction; cardiac arrest." Her minor children are the claimants.
Nettles had no medical history of hypertension, was not taking medication and was not under the care of a doctor. The evidence at the hearing consisted of testimony of Nettles' former husband, her supervisor, and a co-worker.
Claude Nettles, Annie's former husband, testified that Nettles had no history of hypertension. Shirley Johnson, Annie Nettles' supervisor for four years, testified that Nettles on occasion had headaches, as did others working in the plant. Johnson described Nettles' usual work duties but did not, however, see her performing those duties on the date of the "onset." Josephine Pryear, a co-worker, testified Nettles had no unusual *556 problems but frequently complained of headaches at work. Pryear had not seen Nettles performing her job duties on the date of the onset of her fatal condition.
Three medical specialists testified by deposition. Dr. Donald F. Dohn and Dr. Joel Brunt were called as witnesses by the employer and carrier. Dr. Robert D. Holbert testified on behalf of the Nettles' dependents.
Dr. Robert D. Holbert, a nephrologist, testified through his deposition that he had reviewed the medical records of Nettles' hospitalization and agreed with the conclusions of the attending physician concerning the cause of death. When asked if Nettles' work activities caused, contributed to or aggravated her hypertensive condition, he answered:
(In) looking at this lady as an individual who was not treated for her high blood pressure, the increased activities that she had would have, again, been deleterious to her health.
Dr. Holbert was asked again on cross-examination if the activity Nettles was engaged in on the day of her death short-circuited her life, and he responded:
Again, this lady was involved in increased activity with what appears to be malignant phase hypertension.
Because she had malignant phase hypertension and had increased activity the increased activity was deleterious to her health.
In denying the claim, the attorney referee found no causal connection between Nettles' work activity and death, but found the illness that resulted in her death to have begun on the job. Dr. Donald F. Dohn, a neurosurgeon, saw Nettles on February 1, 1984, at the Singing River Hospital. Dr. Dohn testified that Nettles' job activities did not in any regard contribute to her death. Dr. Dohn, however, also testified that he was not familiar with, and did not know what Nettles' work activities were. When asked about Nettles' work activities, he responded:
A She worked at Gulf City Fishery, I think on the line.
Q What were her activities on the line?
A I have no idea.
Dr. Dohn testified that Nettles was able to converse. His written report, however, conflictingly stated:
Apparently, she became less responsive after Demerol and Phenergan had been administered. On examination, she was drowsy but followed commands. She had a mildly stiff neck. She moved all of her extremities equally. She did not speak. ... (emphasis added).
Dr. Joel Brunt, an internal medicine specialist with a subspecialty in nephrology, examined Nettles on February 3, 1984, when called in for consultation by Dr. Dohn. He described Nettles as "poorly responsive." His tests revealed that the small blood vessels inside Nettles' eye had burst, and the heart muscle had thickened and enlarged due to her longstanding high blood pressure. He confirmed that Nettles had suffered a "brain hemorrhage."
He concluded that Nettles' untreated high blood pressure would have, at some point, resulted in a brain, heart or kidney catastrophe. In his opinion, it was not the severe hypertension which caused Nettles' death but the malignant hypertension. Dr. Brunt was not asked if he was familiar with Nettles' work activities nor was he asked if there was any causal connection between her work activity and the condition which led to her death.
In affirming the denial of benefits, the Commission arbitrarily rejected the effects of the unrebutted "found dead" legal presumption, and such action is contrary to Mississippi law.

II.
In U.S. Rubber Reclaim. v. Dep. of Stampley, 508 So.2d 673, 676 (Miss. 1987), a worker collapsed on the job and later died from acute malignant arrhythmia. The Court reviewed the "found dead" presumption and provided:
The "found-dead" presumption, described in Washington v. Greenville Mfg. & Machine Works, 223 So.2d 642, 645 (Miss. 1969), works thusly:
The rule is firmly established in this state when an employee is found dead at *557 a place where his duties require him to be or where he might properly be in the performance of his duties during work hours in the absence of evidence that he was not engaged in his employer's business, there is a presumption that the accident arose out of and in the course of his employment.
This presumption applies regardless of whether the employee is "found dead" at his place of employment, or "falls dead" in the presence of fellow employees. Mississippi State University v. Dependents of Hattaway, 191 So.2d 418 (Miss. 1966).
508 So.2d at 676.
This Court, prior to Stampley, discussed the "found dead" presumption in Road Maintenance Supply, Inc. v. Dep. of Maxwell, 493 So.2d 318 (Miss. 1986):
What causes the presumption to disappear is credible evidence that the deceased employee's work "activities did not cause or contribute to the heart attack." (citations omitted)
* * * * * *
... Only when there is adduced substantial credible evidence inconsistent with the presumption does it evaporate.
* * * * * *
In today's case, we have no credible medical expert opinion testimony to the effect that Maxwell's death, even assuming it to have been the result of a heart attack, was not caused at least in part by his work activities... .
* * * * * *
... The "found dead" presumption is a rule allocating the burden of production of evidence under which the employer and carrier may well escape liability upon proof that the worker's death was wholly unrelated to his work activities. Complaints that the burden is a difficult one belie the likelihood that, if anything, greater unfairness would attend its placement on claimant whose principal witness has been silenced by death.

Maxwell, 493 So.2d at 321, 322 (emphasis added).
Johnston v. Hattiesburg Clinic, P.A., 423 So.2d 114, 117, 119-20 (Miss. 1982) provided:
The "found dead" presumption has been held to apply to a situation as in the case sub judice where admittedly the onset of the heart attack occurred while the employee is about his master's business. (citations omitted)
* * * * * *
... In order to overcome the presumption of causal connection not only must the cause of death be explained, but the work activities of the decedent must also be fully developed to show that such activities did not cause or contribute to the heart attack. (emphasis added).
The only doctor who testified that Nettles' work activities did not contribute to her resulting intracerebral hemorrhage was Dr. Dohn. He, however, also stated that he did not know what Nettles' work activities were. In addition, the employer did not develop exactly what Nettles' work activities had been on the date of the onset of the Nettles' condition in order to overcome the presumption and to show that Nettles' work activities did not cause or contribute to her death. Clearly, the onset of Nettles' death occurred at her place of employment. Although the onset could have possibly transpired elsewhere, it did not.
The employer and carrier failed to rebut the presumption by credible evidence that Nettles' work activities did not cause or contribute to her condition from which she died. The presumption prevails, satisfying the causal connection between Nettles' work duties and the condition which resulted in her death.

III.
Our familiar scope of review is limited and we will reverse the decision of the Commission only if it is manifestly wrong and not supported by substantial evidence. Trest v. B.C. Rogers Processors, Inc., 592 So.2d 110, 111 (Miss. 1991). This Court has repeatedly held that Workers' Compensation Law "should be broadly and liberally construed"; that "doubtful cases should be resolved in favor of compensation"; and that "the humane *558 purposes the act seeks to serve leave no room for narrow and technical construction." Johnston, 423 So.2d at 118-119 (quoting Holman v. Standard Oil Co. of Kentucky, 242 Miss. 657, 667, 136 So.2d 591, 594 (1962)).
We conclude that the decision of the Commission, affirmed by the Circuit Court, is not supported by substantial evidence and, therefore, is manifestly wrong. Therefore, we reverse and remand this cause to the Workers' Compensation Commission for computation of benefits and penalties not inconsistent with this opinion.
REVERSED AND REMANDED TO THE WORKERS' COMPENSATION COMMISSION FOR COMPUTATION OF BENEFITS AND PENALTIES NOT INCONSISTENT WITH THIS OPINION.
HAWKINS, C.J., DAN M. LEE and PRATHER, P.JJ., and SULLIVAN, PITTMAN, BANKS, JAMES L. ROBERTS, Jr. and SMITH, JJ., concur.