LEE, P.J.,
for the Court.
PROCEDURAL HISTORY
¶ 1. On June 5, 2003, Oscar Harbin had a fatal heart attack while working at Outo-kumpu Heatcraft (Heatcraft) in Grenada County, Mississippi. His widow, Louise Harbin, filed a petition to controvert with the Mississippi Workers’ Compensation Commission on September 12, 2003, alleging that Oscar’s heart attack occurred within the course and scope of his employment. A hearing was held on February 17, 2005, before an administrative law judge (ALJ). The ALJ found that Oscar’s death did occur within the course and scope of his employment. The ALJ ordered Heatcraft and its carrier, Ace American Insurance Company (Ace), to pay funeral expenses, immediate lump sum benefits, death benefits to Oscar’s widow and dependent child, reasonable medical expenses incurred as a result of *1262 Oscar’s death and penalties/interest on all unpaid benefits.
¶ 2. Heatcraft filed a petition to review the decision of the ALJ. A hearing was conducted before the Commission on October 10, 2005, and, on November 1, 2005, the Commission reversed the ALJ’s decision and denied Harbin’s claim for benefits. The Commission found that Oscar’s death “did not arise out of and in the course of his employment but was due solely to an underlying pre-existing arte-riosclerotic heart disease.” Harbin appealed this decision to the Grenada County Circuit Court and, on June 29, 2006, the trial court affirmed the Commission’s decision.
¶ 3. Harbin now appeals to this Court asserting nine issues which we cite verbatim: (1) the Commission and the circuit court erred in denying any compensation, which is contrary to law, against the overwhelming weight of the evidence, and is manifestly wrong; (2) the Commission erred in finding that Oscar Harbin did not have a compensable injury as a result of his heart attack and death at work; (3) the Commission and circuit court erred in its findings of fact; (4) the Commission and the circuit court erred under the facts and law in this case in reversing the Administrative Law Judge’s order; (5) the decision of the Commission and the circuit court is contrary to the credible and convincing evidence produced at trial and is contrary to reason and is against the overwhelming weight of the evidence; (6) the Commission and the circuit court erred in disregarding uncontradicted evidence and misconstruing/misapplying the found dead/fell dead presumption; (7) the finding and denial of the Commission and the circuit court is not supported by any substantial evidence; (8) the order of the Commission and the circuit court was arbitrary and capricious and did not rely on the record; and (9) the Compensation Act has been unfairly construed according to the law and evidence in this case, as required by the Workers’ Compensation Act. As all of Harbin’s issues relate to the Commission’s findings, we find it appropriate to condense the issues as follows: whether the Commission’s decision was supported by substantial evidence, was arbitrary or capricious, or was based on an erroneous application of the law.
FACTS
¶ 4. Oscar Harbin worked at Outokumpu Heatcraft as a painter for approximately thirty-seven years. Oscar worked from 7:00 a.m. until 3:00 p.m., with a twenty minute lunch break around 11:00 a.m. On June 5, 2003, Oscar worked his normal job in the paint department until 11:00 a.m. at which time there was no more available work to be performed in the paint department. Oscar was given the option to either leave work for the day or receive training in another department. Oscar, along with another co-worker named Annie Carrodine, chose to receive training in the tubing department. While watching Car-rodine receive instruction from Herman Moore, Oscar collapsed. Attempts to revive Oscar were unsuccessful.
STANDARD OF REVIEW
¶ 5. The standard of review in workers’ compensation cases is well established. The decision of the Commission will be reversed only if it is not supported by substantial evidence, is arbitrary or capricious, or is based on an erroneous application of the law. Weatherspoon v. Croft Metals, Inc., 853 So.2d 776, 778(¶ 6) (Miss.2003) (citing Smith v. Jackson Constr. Co., 607 So.2d 1119, 1124 (Miss.1992)). If the Commission’s decision and findings of fact are supported by substantial evidence, then we are bound by them *1263 even if we as fact finder would have been convinced otherwise. Spann v. Wal-Mart Stores, 700 So.2d 308, 311(¶ 12) (Miss.1997) (citing Fought v. Stuart C. Irby Co., 523 So.2d 314, 317 (Miss.1988)). We will exercise de novo review on matters of law. KLLM, Inc. v. Fowler, 589 So.2d 670, 675 (Miss.1991).
DISCUSSION
I. WAS THE COMMISSION’S DECISION SUPPORTED BY SUBSTANTIAL EVIDENCE, NOT ARBITRARY OR CAPRICIOUS, AND BASED ON APPLICABLE LAW?
¶ 6. Harbin’s main argument is that the Commission’s decision was not supported by substantial evidence, was arbitrary and capricious, and was based on an erroneous application of the law. The Commission found that there was no presumption of a causal connection under the circumstances and that Harbin failed to prove that Oscar’s death was work-related. The Commission discussed the distinction between cases where a worker is “found dead” at work versus cases where a worker “fell/falls dead” at work. Traditionally, the distinction between “found dead” and “fell dead” cases has not been recognized, even though witnesses in a “fell/falls dead” case could offer evidence of any work activity that might have contributed to the employee’s death. U.S. Rubber Reclaiming Co. v. Dependents of Stampley, 508 So.2d 673, 676 (Miss.1987); Okolona v. Dependent of Harlow, 244 So.2d 25, 26 (Miss.1971) (the presumption is rebuttable, but the employer has the burden of going forward with the evidence in order to rebut it). Mississippi Code Annotated Section 71-3-3(b) (Rev.2000) states that an untoward event which results in accidental death “arising out of or in the course of employment without regard to fault ... shall not be presumed to have risen out of and in the course of employment, except in cases of an employee found dead in the course of employment.” (emphasis added). The Commission found that since Oscar’s death occurred in the presence of two other witnesses, Carrodine and Moore, the “found dead” presumption was inapplicable. As a result of the addition of the “found dead” language to Section 71-3-3(b) in 1988, the Commission determined that the omission of any “fell/falls dead” language from the statute eliminated the presumption of a causal connection from cases where an employee falls dead on the job.
¶ 7. Regardless of the “found dead” or “fell dead” debate, heart attack cases, although considered “peculiarly difficult problem[s] in the compensation law,” require proof of a causal connection between the attack and the work activity as well as evidence that the physical exertion or stress exceeded the ordinary wear and tear of life. Dunn, Mississippi Workers’ Compensation § 91 (3d ed.1990). In order to overcome the presumption of causal connection not only must the cause of death be explained, but the work activities of the decedent must also be fully developed to show that such activities did not cause or contribute to the heart attack. Washington v. Greenville Mfg. & Mach. Works, 223 So.2d 642, 647 (Miss.1969).
¶ 8. Harbin testified that on the morning of June 5, 2003, Oscar left for work around 6 a.m. Oscar made no complaints about his health prior to leaving for work. Oscar’s shift started at 7 a.m. and, after arriving, he put on his paint suit and mask. Oscar’s job was to paint one side of a coil with a spray gun. Carrodine testified that it was warm in the plant that day and the plant did not have air conditioning. By all accounts, it was a normal workday in the paint department. Oscar and Carrodine worked until their lunch break at 11:00 *1264 a.m. At that time there was no more work to be done in the painting department. The employees were given the opportunity to quit work for the day or receive training in another department of the plant. Oscar and Carrodine decided to stay and, after their lunch break, they went to the tubing department. Moore began to instruct Carrodine on how to use a particular machine. While waiting to be instructed by Moore on how to operate another machine, Oscar collapsed and died.
¶ 9. Although Carrodine testified that it was warm in the plant that day, another employee, Elsie Brown, testified that it was unusually mild. Yet another employee, George Purnell, testified via deposition that it was hot in the plant that day. There was no medical evidence that the temperature in the plant contributed to Oscar’s heart attack.
¶ 10. An autopsy performed by Dr. Thomas McGee found the cause of death to be “compatible with witnessed sudden cardiac death.” The autopsy also revealed that Oscar suffered from focally moderate to severe coronary atherosclerosis as well as hypertension. Dr. Thomas Thompson, a cardiologist, reviewed the relevant medical records and concluded that there was no causal relationship between Oscar’s work and his death. Dr. Thompson concluded that Oscar’s heart attack was a result of his underlying atherosclerotic heart disease and that “the only relationship that existed with respect to Mr. Harbin’s work and his subsequent unfortunate demise by sudden cardiac death was a temporal relationship.” According to Oscar’s medical records, he was being treated for hypertension. Notes in Oscar’s medical records also show that he neglected to take his hypertension medication, continued to smoke and frequently missed doctor’s appointments.
¶ 11. Dr. Mary Ann Tarsi, Oscar’s physician, stated via letter to counsel that Oscar’s death was due to an acute MI (myocardial infarction) or a sudden cardiac arrhythmia. Dr. Tarsi further stated, “[Oscar’s death] certainly could have been due to underlying disease aggravated by work factors. I would not be able to define that in any manner, however, nor would I be able to offer proof of cause or disprove cause of his untimely and unfortunate death.”
¶ 12. The Commission relied upon Oscar’s work activities the day of his death, Dr. Thompson’s expert testimony, Oscar’s medical history and the autopsy report in concluding that Oscar died at work but not because of work. The Commission found that the proof offered to support Harbin’s claim, namely Dr. Tarsi’s letter and testimony concerning the temperature in the plant, failed to support a finding that his death was work-related. In regards to Dr. Tarsi’s letter, the Commission found that Dr. Tarsi “ultimately could not state to any degree of medical probability what caused Mr. Harbin’s death.” We agree with the Commission’s decision and find substantial evidence to support this determination.
¶ 13. THE JUDGMENT OF THE GRENADA COUNTY CIRCUIT COURT IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANTS.
KING, C.J., MYERS, P.J., IRVING, CHANDLER, GRIFFIS, BARNES, ISHEE, ROBERTS AND CARLTON, JJ., CONCUR.