# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2018-WC-01167-COA

**BAPTIST MEMORIAL HOSPITAL-NORTH MISSISSIPPI INC. AND BAPTIST MEMORIAL HEALTH CARE CORPORATION**  APPELLANTS

**v.**

**DEPENDENTS OF ANGELA SLATE**  APPELLEE

| | |
|---|---|
| DATE OF JUDGMENT: | 07/18/2018 |
| TRIBUNAL FROM WHICH APPEALED: | MISSISSIPPI WORKERS' COMPENSATION COMMISSION |
| ATTORNEY FOR APPELLANTS: | MARJORIE T. MATLOCK |
| ATTORNEYS FOR APPELLEE: | J. KEITH PEARSON SARAH LYNN DICKEY |
| NATURE OF THE CASE: | CIVIL - WORKERS' COMPENSATION |
| DISPOSITION: | AFFIRMED - 10/01/2019 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE J. WILSON, P.J., McDONALD AND McCARTY, JJ.**

**McCARTY, J., FOR THE COURT:**

¶1.     After an employee was found dead at work, her family sought workers' compensation benefits. Her employer sought to rebut the presumption that her death was compensable. The Mississippi Workers' Compensation Commission determined that the employer had not met its burden and awarded death benefits to the decedent's family. We affirm because these findings were supported by substantial evidence.

## FACTS AND PROCEDURAL HISTORY

¶2.     At the time of her death in 2016, Angela Slate was a material-management technician at Baptist Memorial Hospital. She had worked at Baptist since 2006. Her morning job duties

consisted of filling requisitions and delivering supplies to the various hospital departments. Her afternoon duties consisted of processing patient charges and handling paper work. Her job required lifting and some pushing and pulling of supplies. Her boss, Gayle Watts, testified that Slate was not required to lift anything over thirty pounds. However, on cross-examination, Watts admitted that Slate's job description was described as "medium" or "high energy level," meaning that Slate was required to lift and carry up to fifty pounds up to thirty-five percent of the day and push or pull between 150-200 pounds for sixty-seven to one-hundred percent of the day. Watts stated that Slate had been angry after being denied a promotion several months before her death. Because Watts did not see Slate that day, she could not testify as to Slate's work activities.

¶3. Eddie Slate, Slate's husband, testified that he had been married to Slate for over twenty-six years and they had four children. Eddie said his wife had been stressed at work due to increased turnover, which resulted in Slate training the new employees. After Slate was denied the promotion, Eddie stated that she became moody and tired and began to look for another job within the department.

¶4. Another co-worker, Nicholas Griffin, saw Slate return to her office after lunch on the day that she died. Griffin stated that he walked past Slate's office possibly two times and glimpsed Slate at her desk. In his testimony, he agreed that it was fair to say he probably saw his co-worker for only around a total of six seconds in that patch of time. Around 2:30 p.m., Griffin walked past Slate's office again and thought she was sleeping. He and another employee approached Slate but noticed that she was dead. Emergency personnel attempted

2

to revive Slate without success. The death certificate listed Slate's cause of death as acute myocardial infarction. The parties agree that no autopsy was conducted.

¶5.    Neither Watts nor Griffin had any knowledge of what Slate was doing between 1:30 p.m. and 2:30 p.m. on the day of her death. Watts could not remember seeing Slate at all that particular day, and Griffin only saw Slate when he walked past her office. There was no direct evidence as to what had actually happened on the day in question.

¶6.    Dr. James Stone, a clinical cardiac electrophysiologist, was retained as an expert by Baptist to testify about Slate's death. In his deposition, Dr. Stone conceded outright that he could not state with a reasonable degree of medical certainty the exact cause of Slate's death because no autopsy was conducted.[1] However, he believed that Slate's sudden death could only be attributed to a limited number of causes. Dr. Stone stated that the number one cause of sudden death is heart attack. Other potential causes included primary cardiac arrhythmia, genetic abnormalities, congenital abnormalities, pulmonary embolism, or stroke. Dr. Stone testified that "you cannot pinpoint one exact cause because there's no autopsy done. But there are a finite number of medical causes for an event like this. And so if you look at the finite number of causes, you would have to say that one of these was almost certainly the cause of death." Dr. Stone further stated that Slate "had no warning signs, no decrease in her ability to do her activity level, . . . nothing in her job description could have led to her heart attack."

¶7.    On cross-examination, Dr. Stone admitted that he did not know what Slate was doing

---

[1] Dr. Stone indicated that he reviewed Slate's medical records, but no medical records were submitted to the Commission at any point in the process.

prior to her death. He also agreed that he could not rule out the possibility that Slate "could have fallen and struck her head." Likewise, when asked if "she could have been carrying a 100-pound box around for a while and that precipitate her getting short of breath," the doctor admitted "I have no idea what she was doing in that period of time."

¶8.　The Administrative Judge found that Baptist failed to carry its burden of rebutting the found-dead presumption, and in turn awarded Slate's family death benefits. The Commission affirmed that decision. Baptist seeks reversal from this Court on two points; arguing that it did rebut the found-dead presumption, or in the alternative, that the found-dead presumption must be abandoned.

## STANDARD OF REVIEW

¶9.　When the findings of the Commission are supported by substantial evidence, they are binding on this Court. *Mitchell Buick, Pontiac & Equip. Co. v. Cash*, 592 So. 2d 978, 980 (Miss. 1991). "Under Mississippi law, the Workers' Compensation Commission is the ultimate finder of facts in compensation cases, and as such, its findings are subject to normal, deferential standards upon review." *Natchez Equip. Co. Inc. v. Gibbs*, 623 So. 2d 270, 273 (Miss. 1993). "We are bound even though the evidence would convince the [C]ourt otherwise if it were instead the ultimate fact[-]finder. We will overturn [the] Commission's decision only when there is an error of law or an unsupportable finding of fact." *Montana's Sea Kettle Rest. v. Jones*, 766 So. 2d 100, 102 (¶7) (Miss. Ct. App. 2000) (internal quotation marks and citation omitted). When the Commission adopts the AJ's findings and conclusions, we review the AJ's findings and conclusions as those of the Commission.

4

*Moore's Feed Store Inc. v. Hurd*, 100 So. 3d 1011, 1017 (¶22) (Miss. Ct. App. 2012).

## DISCUSSION

### I.    Baptist failed to overcome the found-dead presumption.

¶10.    In its first issue, Baptist argues that it produced substantial credible evidence to overcome the found-dead presumption. Before its codification by the Legislature, the Mississippi Supreme Court described the "found-dead" presumption:

> The rule is firmly established in this state when an employee is found dead at a place where [her] duties require [her] to be or where [she] might properly be in the performance of [her] duties during work hours in the absence of evidence that [she] was not engaged in [her] employer's business, there is a presumption that the accident arose out of and in the course of [her] employment.

*Washington v. Greenville Mfg. & Mach. Works*, 223 So. 2d 642, 645 (Miss. 1969). The law now defines an injury for purposes of workers' compensation: "An untoward event or events shall not be presumed to have arisen out of and in the course of employment, except in the case of an employee found dead in the course of employment." Miss. Code Ann. § 71-3-3(b) (Rev. 2011).

¶11.    To rebut the presumption, an employer or carrier must show two things: it must first explain the cause of death of the employee, and further "the work activities of the decedent must also be fully developed to show that such activities did not cause or contribute" to the death. *Nettles v. Gulf City Fisheries Inc.*, 629 So. 2d 554, 557 (Miss. 1993). In this fashion a "carrier may well escape liability upon proof that the worker's death was wholly unrelated to his work activities." *Id*. This is the employer's burden alone: "It is up to the employer/carrier to rebut the presumption, and it is not the burden of the claimant to support

5

the presumption." *Miss. Baptist Med. Ctr. v. Dependents of Mullett*, 856 So. 2d 612, 617 (¶8) (Miss. Ct. App. 2003). The burden is significant, since "[o]nly when there is adduced substantial credible evidence inconsistent with the presumption does it evaporate." *Nettles*, 629 So. 2d at 557. Credible evidence does not mean "guesswork, speculation[,] and conjecture" about what happened. *Rd. Maint. Supply Inc. v. Dependents of Maxwell*, 493 So. 2d 318, 322 (Miss. 1986).

¶12. Baptist argues it produced substantial, credible evidence about Slate's work activities leading up to the time of her death, as well as Dr. Stone's opinion as to the cause of her death, and the expert's opinion that Slate's work activities could not have caused or contributed to her death. However, there was no autopsy performed in this case, which might have explained the cause of death for purposes of the rebutting the presumption. The AJ found that the testimony of Dr. Stone could not explain the death, finding that Dr. Stone's opinion that Slate's job did not contribute to her death was "without any substantial basis." The retained expert admitted that he had never treated or even met the decedent. This is exactly the type of "guesswork" which cannot overcome the burden in found-dead cases.

¶13. Further, the AJ ruled that Dr. Stone "assumed there was nothing unusual concerning [Slate's] job duties or responsibilities and there was nothing about the day she died or during the week that was out of the ordinary that caused her emotional stress or duress." Dr. Stone's opinion was based upon the assumption that nothing unusual occurred the day of Slate's death. However, there was no direct evidence of what happened to Slate that day, as the expert repeatedly admitted. Likewise, neither Watts nor Griffin had personal knowledge of

6

her activities, and only Griffin saw her briefly that day for what he conceded was likely six seconds. Both simply assumed Slate's day was normal.

¶14.    In similar cases our courts have found that the presumption should continue to apply. In one the decedent was found dead at his place of employment. *Washington*, 223 So. 2d at 643. Based upon the decedent's history of hypertensive cardiovascular disease and testimony about his work habits, a doctor concluded that the decedent suffered a heart attack that was not related to his work activities. *Id.* at 644. As a result, the Commission denied the decedent's family death benefits. *Id.* at 643. Yet the Supreme Court reversed, finding that the employer failed to rebut the found-dead presumption by substantial evidence. *Id.* at 647. The Court noted that because there was no direct evidence of the decedent's usual routine, the doctor's testimony was "patently conjectural and was not proper opinion testimony." *Id.* at 644. "The doctor had nothing upon which to base his testimony that the decedent's job did not in any way contribute to his death even assuming that he died of a heart attack." *Id.*

¶15.    Relying heavily on *Washington*, the Supreme Court reversed the Commission again in *Johnston v. Hattiesburg Clinic, P.A.*, 423 So. 2d 114, 120 (Miss. 1982). Like *Washington* and the present case, the doctor found no causal connection between the decedent's death and her employment. *Id.* at 116. Because there was no direct evidence of the decedent's work activities prior to her death, the Court concluded that the doctor's testimony was based on an assumption. *Id.* at 120. As such the Court found that the employer could not rebut the found-dead presumption by substantial evidence. *Id.*

¶16.    This case is similar to both *Washington* and *Johnston* because Baptist failed to

7

produce direct evidence of Slate's work activities prior to her death. Baptist's evidence was based on assumptions. The Commission agreed with the AJ's findings that Baptist failed to rebut the found-dead presumption by substantial credible evidence. We find substantial evidence in this record to support the Commission's decision.

## II.     The found-dead presumption remains as statutory authority.

¶17.    In its other issue, Baptist argues we should cast aside the presumption of benefits when an employee is found dead at work in light of a 2012 amendment to the Workers' Compensation Act. Yet the adoption of Mississippi Code Annotated section 71-3-1(1) regarding presumptions in the Act did not eliminate, alter, or address the found-dead presumption in the definitions component of the law. Rather, the found-dead presumption remains codified within the definition of what constitutes an injury: "An untoward event or events shall not be presumed to have arisen out of and in the course of employment, except in the case of an employee found dead in the course of employment." § 71-3-3(3)(b).[2]

¶18.    "The most fundamental rule of statutory construction is the plain meaning rule, which provides that if a statute is not ambiguous, then this Court must apply the statute according to its terms." *State ex rel. Hood v. Madison Cty. ex rel. Madison Cty. Bd. of Sup'rs*, 873 So.

---

[2] In fact, when given the choice, our Legislature opted to retain the found-dead presumption rather than eliminate it. Prior versions of the 2012 bill that ultimately revised section 71-3-1(1) had eliminated the statutory found-dead presumption in section 71-3-3. But based on input from other members, the Conference Committee omitted the proposed change to section 71-3-3. The legislative history of Senate Bill 2576 (2012) and the presentation of the conference report are available at the following links:
(1) http://billstatus.ls.state.ms.us/2012/pdf/history/SB/SB2576.xml (last visited Sept. 18, 2019);
(2) http://law.mc.edu/legislature/bill_details.php?id=863&session=2012 (last visited Sept. 18, 2019).

2d 85, 90 (¶19) (Miss. 2004). The presumption remains as codified by the Legislature and will apply. Indeed, the presumption harmonizes with the 2012 amendment cited by Baptist, since it prohibits the presumption that any "untoward event" in the workplace is automatically compensable, unless the untoward event is the extremely rare situation where "an employee [is] found dead in the course of employment." § 71-3-3(3)(b).

¶19. As the Supreme Court has held in context of the public records law, courts "cannot ignore the applicability of the plain and unambiguous language" of the Legislature. *Miss. State Univ. v. People for the Ethical Treatment of Animals Inc.*, 992 So. 2d 595, 610 (¶26) (Miss. 2008). Ultimately, our lawmakers have seen fit to declare a presumption in favor of employees found dead in the course of their employment; "the wisdom or folly of the pertinent legislation is strictly within the constitutional power of the Legislature," and "[a]ny disagreements with those directives are best aimed toward the Legislature." *Id*. There is, therefore, no conflict between the statutes, and the presumption will be applied as written.

## CONCLUSION

¶20. There was substantial credible evidence to find that Angela Slate died in the course of her employment at Baptist, and the employer failed to rebut this presumption. Since the presumption remains codified by the Legislature it will be applied as written.

¶21. **AFFIRMED.**

**BARNES, C.J., CARLTON AND J. WILSON, P.JJ., WESTBROOKS, TINDELL, McDONALD AND LAWRENCE, JJ., CONCUR. GREENLEE AND C. WILSON, JJ., NOT PARTICIPATING.**

9